UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:

| | | |
|---|---|---|
| THE UNITED STATES, | ) | |
| Plaintiff, | ) | |
| v. | ) | Court no. 23-00201 |
| RAYSON GLOBAL, INC. and DORIS CHENG, | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

The United States brings this action against defendants Rayson Global, Inc. and Doris Cheng, and alleges the following:

1. This is an action to recover unpaid customs duties and to enforce monetary civil penalties pursuant to 19 U.S.C. § 1592, relating to 47 entries of imported uncovered mattress innersprings (innersprings), Attachment A (appraisal worksheet), that were transshipped from China through Thailand to avoid the payment of antidumping duties (ADD) on innersprings imported from the People's Republic of China (PRC) and "Section 301" duties on certain merchandise imported from the PRC.

2. This Court possesses exclusive jurisdiction to entertain this action pursuant to 28 U.S.C.§ 1582.

3. Defendant Rayson Global, Inc. was incorporated in California on or about September 16, 2013, and lists a principal place of business as 15344 E. Valley Blvd. Suite C, City of Industry, California 91746.  Rayson Global, Inc. purports to specialize in furniture and home furnishing manufacturing.

4. Defendant Doris Cheng is a California resident who resides in Whittier, California.

5. Doris Cheng operates Rayson Global, Inc., a company through which she directed the importation of innersprings.

6. Doris Cheng is solely responsible for the importation of merchandise by Rayson Global, Inc.

7. Doris Cheng personally supplies all shipment information to Rayson Global, Inc.'s customs broker.

8. Doris Cheng is the only officer of Rayson Global Inc. to receive a salary from Rayson Global, Inc.

9. In 2004, a company called Tower Grow began importing merchandise, including innersprings, exclusively from the PRC.

10. The address for Tower Grow was the same as Doris Cheng's home address.

11. Doris Cheng was a co-owner of Tower Grow.

12. Tower Grow and Rayson Global, Inc. at one time shared a business address at Ms. Cheng's residence in Whittier, California.

13. In 2008, CBP made two seizures from Tower Grow for Chinese textile quota evasion and the smuggling of finished mattresses, mattress foundation covers, quilted zipper mattress covers, socks, and woven fabrics.

14. In or around 2008, as CEO and president of Tower Grow, Doris Cheng admitted to U.S. Customs and Border Protection (CBP) Import Specialists that she intentionally double invoiced, undervalued merchandise, and provided fraudulent documents to CBP with lesser values and quantities than were accurate.

15. On August 6, 2008, the Department of Commerce (Commerce) published a notice of preliminary determination in an antidumping duty investigation of uncovered innerspring units from China with ADD case number A-570-928-000 through -008. *Innersprings from China*, 73 Fed. Reg. 45,729 (Dep't of Commerce Aug. 6, 2008) (prelim.). The notice established an "all others" ADD rate at the PRC-wide rate of 234.51 percent effective on August 6, 2008.

16. After August 6, 2008, over the next five months, Tower Grow began importing innersprings claimed to be from Hong Kong. All other merchandise imported by Tower Grow continued to be claimed as manufactured in the PRC.

17. In December 2008, an allegation was filed with CBP that Tower Grow was evading the China antidumping case and ADD by claiming Hong Kong as a false country of origin. CBP conducted multiple importer visits to Tower Grow and met with Doris Cheng.

18. In January 2009, the Hong Kong attaché attempted to locate the factory in Hong Kong at which Doris Cheng claimed innersprings imported by Tower Grow were being manufactured. Two claimed addresses were discovered to be logistic companies with no manufacturing; a third claimed address was the address of an apartment building at which manufacturing was prohibited. Tower Grow and Doris Cheng provided production records and timecards for the day of the attaché visit showing 23 employees working two shifts. Subsequently, CBP issued a letter of investigation to Tower Grow.

19. On December 29, 2008, Commerce published its final determination on ADD case number A-570-928 for innersprings imported from the PRC. *Innersprings from China*, 73 Fed. Reg. 79,443 (Dep't of Commerce Dec. 29, 2008) (final).

20. On February 19, 2009, Commerce issued an ADD order. *Innersprings from China*, 74 Fed. Reg. 7,661 (Dep't of Commerce Feb. 19, 2009) (order). The scope of the order included "uncovered innerspring units composed of a series of individual metal springs joined together in sizes corresponding to the sizes of adult mattresses . . . and units used in smaller constructions, such as crib and youth mattresses." *Id*. The ADD order established a China-wide rate of 234.51 percent *ad valorem* and instructed CBP to continue collecting cash deposits at this rate. *Id*. at 7,662. This rate was in effect for the relevant importation period described in this Complaint.

21. During the period from on or about May 26, 2018, through November 8, 2019, Rayson Global, Inc. operating under the direction of Doris Cheng caused to be entered or introduced (or attempted to enter or introduce) into the commerce of the United States 47 entries ("subject entries" that are identified in Exhibit A to this complaint) of innersprings manufactured in the PRC.

22. The innersprings covered by the subject entries were entered or introduced into the commerce of the United States by means of material false statements, acts, or omissions that resulted in the evasion of ADD on innersprings imported from the PRC, ad valorem duties, and Section 301 duties applicable to certain merchandise from the PRC.

23. In connection with the subject entries, Rayson Global, Inc. and Doris Cheng falsely declared, or caused to be falsely declared, that the subject entries of innersprings were produced in Thailand.

24. In connection with the subject entries, Rayson Global, Inc. and Doris Cheng falsely declared, or caused to be falsely declared, that entries of innersprings were type 01 consumption entries not subject to the ADD order on innersprings manufactured in the PRC.

25. In connection with the subject entries, Rayson Global, Inc. and Doris Cheng falsely omitted from entry documentation, or caused to be falsely omitted from entry documentation, the fact that entries of innersprings were subject to ADD order A-570-928.

26. The Generalized System of Preferences (GSP) is a preferential trade agreement program for certain goods produced in beneficiary developing countries, including Thailand, that provides for duty free treatment.

27. In connection with the subject entries, Rayson Global, Inc. and Doris Cheng falsely declared, or caused to be falsely declared, that entries of innersprings qualified for duty free treatment under the GSP for merchandise manufactured in Thailand.

28. Section 301 of the Trade Act of 1974, as amended, gives the U.S. Trade Representative (USTR) authority to enforce U.S. rights under any trade agreement and to eliminate "an act, policy, or practice of a foreign country" that is "unreasonable or discriminatory and burdens or restricts United States commerce." 19 U.S.C. §§ 2411–2414.

29. On August 18, 2017, the USTR initiated an investigation pursuant to Section 301 to determine whether certain acts, policies, and practices of China related to technology transfer, intellectual property, and innovation were actionable under the Trade Act. *China Section 301 Initiation*, 82 Fed. Reg. 40,213 (USTR Aug. 24, 2017).

30. On March 22, 2018, the USTR issued the findings of its investigation, which determined that certain practices were unreasonable or discriminatory and burdened or restricted U.S. commerce. *China Section 301 Determination*, 83 Fed. Reg. 14,906 (USTR Apr. 6, 2018). That same day, the

President directed the USTR to consider whether actions should include increased tariffs on goods from China.  83 Fed. Reg. 13,099 (USTR Mar. 27, 2018).

31.    USTR subsequently published a proposed list of products and tariff increases.  The final lists were issued over the course of the next few months.  List 3 is comprised of 6,000 Harmonized Tariff Schedule of the United States (HTSUS) subheadings subject to a 10 percent *ad valorem* duty rate as of September 24, 2018.  *Notice of Modification of Section 301 Action*, 83 Fed. Reg. 47,974 (USTR Sept. 21, 2018).  Effective May 10, 2019, the Section 301 duty rate was increased to 25 percent. *Notice of Modification of Section 301 Action*, 84 Fed. Reg. 20,456 (USTR May 9, 2019).

32.    List 3 includes the HTSUS subheading for the merchandise covered by the subject entries.  The subject entries include imports of merchandise made from September 26, 2018, through November 8, 2019, a time period when List 3 applied to the applicable subheading.

33.    The false statements and omissions referenced in paragraphs 23, 24, 25, and 27 were material because they had the potential to, and did, affect CBP's determinations regarding the amount of duty owed on the subject entries and resulted in an actual and potential duty loss of approximately $2,431,225.93.

34.    Rayson Global, Inc.'s and Doris Cheng's material false statements referenced in paragraphs 23, 24, 25, and 27 resulted from their failure to exercise reasonable care and competence to ensure that statements made and information provided in connection with the importation of merchandise were complete and

accurate. As early as 2004, Doris Cheng imported, or caused to be imported, innersprings through Tower Grow, and upon information and belief, by 2009, Doris Cheng was knowledgeable about the importation of innersprings, including the ADD order on innersprings manufactured in the PRC.

35.  In connection with the subject entries, Rayson Global, Inc. and Doris Cheng failed to exercise reasonable care because they did not seek clarification or guidance from CBP, their customs broker, or another customs professional, when causing these entries to be imported, did not advise CBP or their customs broker that they were importing merchandise that was possibly subject to an ADD order and/or otherwise did not take reasonable measures to ensure that their imported merchandise was correctly described.

36.  On April 5, 2023, CBP issued demands in the amount of $783,032.02[1] for unpaid duties upon liquidated entries if subject innersprings pursuant to 19 U.S.C. § 1592(d) for violation of 19 U.S.C. § 1592(a) to Rayson Global Inc. and Doris Cheng.

37.  On or about April 6, 2023, CBP issued pre-penalty notices and statements to Rayson Global, Inc. and Doris Cheng. In the pre-penalty notice CBP

---

[1] At that time, CBP did not include potential lost revenue of $2,225,502.10 in its demand. We have included all lost revenue in the complaint because Commerce has reaffirmed the 234.51 percent China-wide antidumping duty rate for all periods covered by the complaint.

proposed a monetary penalty for negligence in the amount of $4,200,081.76[2], equal to the appraised domestic value of the merchandise.

38. On or about April 18, 2023, CBP issued penalty notices and statements to Rayson Global, Inc. and Doris Cheng demanding payment of the $4,200,081.76 penalty.

39. On or about April 24, 2023, CBP provided Rayson Global, Inc.'s and Doris Cheng's attorney with a statute of limitations waiver and the penalty notice.

40. On or about May 8, 2023, CBP issued the first bill for both the duty demand of $783,032.02 and the penalty to Rayson Global, Inc.'s and Doris Cheng's attorney.

41. On or about May 25, 2023, CBP issued the second bill for both the duty demand of $783,032.02 and the penalty to Rayson Global, Inc.'s and Doris Cheng's attorney.

42. On or about June 20, 2023, CBP issued the third bill for both the duty demand $783,032.02 and the penalty to Rayson Global, Inc.'s and Doris Cheng's attorney.

43. Rayson Global, Inc., Doris Cheng, and their attorney have not responded to the duty demand, penalty notice, or any of the three bills.

---

[2] We have not included entries made between May 26, 2018, and September 6, 2018, in the complaint, although the penalty notice covered entries made during that timeframe.

Accordingly, CBP has exhausted all administrative remedies with respect to Rayson Global, Inc. and Doris Cheng.

## COUNT I

44. The allegations contained in paragraphs 1 through 43 are restated and incorporated by reference.

45. The acts and omissions described in paragraphs 21 through 32 were committed as the result of negligence by Rayson Global, Inc. and Doris Cheng, by failing to exercise the degree of reasonable care and competence expected from a person in the same circumstances, in violation of 19 U.S.C. § 1592(a)(1)(A) and (B).

46. By reason of these negligent violations, Rayson Global, Inc. and Doris Cheng are jointly and severally liable to the United States pursuant to 19 U.S.C. § 1592(c)(3) for a penalty in the amount of $3,381,607.03, equal to the domestic value of innerspring entries made by Rayson Global, Inc. from September 20, 2018, to November 8, 2019, for which there was a total loss of revenue of $2,431,225.93, plus post-judgment interest.

## COUNT II

47. The allegations contained in paragraphs 1 through 46 are restated and incorporated by reference.

48. Pursuant to 19 U.S.C. § 1592(d), the United States is entitled to the restoration of lawful duties, taxes, and fees lost as a result of a violation of 19 U.S.C. § 1592(a), regardless of whether a penalty is imposed.

49. As a result of Rayson Global, Inc.'s and Doris Cheng's negligent violation of 19 U.S.C. § 1592(a), described in paragraphs 21 through 32 above, Rayson Global, Inc. and Doris Cheng are jointly and severally liable to the United States in the amount of $2,431,225.93 for lawful duties, taxes, and/or fees of which the United States has been deprived, plus pre-judgment and post-judgment interest.

### PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court:

(A) enter judgment for the United States for a penalty for violation of 19 U.S.C. § 1592(a) at a culpability level of negligence in the amount of $3,381,607.03, plus post-judgment interest, costs, and such other relief as may be just and appropriate, against Rayson Global, Inc. and Doris Cheng, jointly and severally.

(B) enter judgment for the United States pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus pre-judgment and post-judgment interest, costs, and such other relief as may be just and appropriate, against Rayson Global, Inc. and Doris Cheng, jointly and severally.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

|  |  |
|---|---|
|  | /s/ FRANKLIN E. WHITE, JR.<br>Assistant Director |
| OF COUNSEL:<br>Ina Zing<br>Attorney<br>U.S. Customs and Border Protection<br>Office of the Assistant Chief Counsel<br>Seattle, WA | /s/ STEPHEN C. TOSINI<br>Senior Trial Counsel<br>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 616-5196<br>Email: stephen.tosini@usdoj.gov |
| September 22, 2023 | Attorneys for Plaintiff |