UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| THE UNITED STATES, ) | |
| Plaintiff, ) | |
| v. ) | Court No. 23-00201 |
| RAYSON GLOBAL, INC. and ) DORIS CHENG, ) | |
| Defendants. ) | |

## JUDGMENT

On July May 23, 2024, the Court entered default against defendants, Rayson Global, Inc. and Doris Cheng because they had failed to plead or otherwise respond to the amended complaint filed by plaintiff, the United States.  Pursuant to plaintiff's motion for entry of judgment pursuant to Rule 55(b) of the Rules of this Court, it is hereby

ORDERED that judgment is entered in favor of the United States against defendants Rayson Global, Inc. and Doris Cheng, jointly and severally, for lost revenue pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus prejudgment interest; and a penalty pursuant 19 U.S.C. § 1592(c) in the amount of $3,381,607.03.

Dated:_____                          _____
    New York, NY                                                           SENIOR JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| THE UNITED STATES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RAYSON GLOBAL, INC. and )<br>DORIS CHENG, )<br>)<br>Defendants. )<br>) | **PUBLIC VERSION**<br>(appendix omitted)<br>Court No. 23-00201 |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

Pursuant to USCIT R. 55(b), plaintiff, the United States, respectfully requests that the Court enter default judgment against defendants Rayson Global, Inc. (Rayson) and Doris Cheng.

## BACKGROUND

This is a transshipment case that resulted in the loss of antidumping duties, Section 301 (19 U.S.C. § 2411) duties, and ordinary customs duties on mattress innersprings from China. Specifically, Rayson, under Ms. Cheng's sole direction, imported and negligently misrepresented the country of origin of Chinese mattress innersprings that had been transshipped through Thailand.

Mattress innersprings from China are subject to a China-wide antidumping duty rate of 234.51 percent. *Mattress Innersprings from China*, 74 Fed. Reg. 7,661, 7,662 (Dep't of Commerce Feb. 19, 2009) (order). Innersprings from China entered after

September 26, 2018, are also covered under "List 3" of the products subject to Section 301 tariffs, at a rate of 10 percent. *Notice of Modification of Section 301 Action*, 83 Fed. Reg. 47,974 (USTR Sept. 21, 2018). Effective May 10, 2019, the Section 301 duty rate was increased to 25 percent. *Notice of Modification of Section 301 Action*, 84 Fed. Reg. 20,456 (USTR May 9, 2019). And innersprings from Thailand may enter duty-free under the Generalized System of Preferences, 19 U.S.C. § 2461, whereas Chinese products may not enter duty-free under that program.

Rayson imported 46 entries of mattress springs from Thailand between September 26, 2018, and November 8, 2019, representing that Green Asia Parts Ltd. (Green Asia) was the manufacturer. Brooks Dec. at ¶ 5, Rayson-Appx2.[1] None of the entries were claimed as type 03, listed the applicable antidumping case, or were submitted with the required antidumping cash deposit. *Id*. at Ex. F, Rayson-Appx67-283 (entry documents); *id*. at Ex. E, Rayson-Appx40 (entry spreadsheet).

U.S. Customs and Border Protection (CBP) investigated Rayson's shipments in response to a petition filed under the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517. Brooks Dec. at ¶ 6, Rayson-Appx2; *id*. at Ex. G, Rayson-Appx285-288 (EAPA final determination). Leggett & Platt, Inc. (Leggett) had submitted an EAPA allegation to CBP, requesting that CBP investigate innersprings imported by Rayson. It alleged that

---

[1] The declaration of Import Specialist Jeanelle Brooks and Exhibits A through P are attached to this motion as an appendix. We designate page citations within the appendix as "Rayson-Appx__."

2

Rayson was evading antidumping duties by transshipping innersprings manufactured in China through Thailand by way of Green Asia. *Id*.

In October 2019, CBP sent two CF-28 (request for information) forms to Rayson, requesting that it substantiate the manufacturer of two entries of innersprings purportedly manufactured by Green Asia. *Id*. at Ex's C & D Rayson-Appx14-92. Ms. Cheng responded on behalf of Rayson, stating that the mattress innersprings were manufactured by Green Asia in Thailand. *Id*. at Ex. G, Rayson-Appx146. The CBP Regional Attaché Office in Thailand conducted five onsite visits to the various addresses associated with the two CF-28 entries. *Id*. at Ex. G, Rayson-Appx287. The Attaché did not find evidence of manufacturing at any of the addresses visited. *Id*. CBP also learned from Thai customs that Green Asia had imported innersprings from China into Thailand in amounts identical to its exports to Rayson. *Id*.

After CBP initiated an EAPA investigation, it sent Rayson a request for information in February 2020. Ms. Cheng responded on behalf of the company and admitted that she is "the only person involved with the merchandise importation." *Id*. at Ex. B, Rayson-Appx10. Similarly, Ms. Cheng admitted that she provided all documentation regarding entries of innersprings to the customs broker handling the entries. *Id*.

CBP suffered a total loss of revenue in the amount of $2,431,225.93. *Id*. at ¶ 10, Rayson-Appx3; *id*. at Ex. E, Rayson-Appx94-95. And the domestic value of the subject innersprings is $3,381,607.03. *Id*. at ¶ 11, Rayson-Appx3; *id*. at Ex. E, Rayson-Appx94-95.

3

CBP issued a pre-penalty notice on April 18, 2023, alleging a culpability level of negligence and asserted a loss of revenue of $3,008,534.12, and a penalty of $4,200,081.76, which represented the domestic value of the subject merchandise. Am. Compl. at ¶¶ 37-42, ECF No. 4. CBP issued its penalty notice on April 24, 2023. *Id*. The culpability level, loss of revenue, and penalty amount remained unchanged from the pre-penalty notice. *Id*. Because the statute of limitations had expired for certain entries, in our original and amended complaints, we sought reduced lost revenue pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus prejudgment interest; and a penalty pursuant to 19 U.S.C. § 1592(c) in the amount of $3,381,607.03. *See generally* Am Compl.

The Court entered default pursuant to USCIT R. 55(a) on May 23, 2024. ECF No. 15.

## ARGUMENT

**I.      Standard Of Review**

This Court possesses exclusive jurisdiction to entertain claims by the United States that seek to recover lost revenue and to assess penalties against persons that enter merchandise into the United States pursuant to material false statements. 28 U.S.C. § 1582; 19 U.S.C. § 1592.

Section 1592 provides for the imposition of "[p]enalties for fraud, gross negligence, and negligence" in the entry of merchandise into the United States. "[N]o person by fraud, gross negligence, or negligence – (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of –

4

(i) any document or electronically transmitted data or information, written, or oral statement, or act which is material or false, or (ii) any omission which is material." 19 U.S.C. § 1592(a). "[I]f the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a), the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed." 19 U.S.C. § 1592(d).

To prove negligence, the Government need only establish the act or omission constituting the violation, and the burden falls upon the alleged violator to prove that their act or omission did not occur as a result of negligence. 19 U.S.C. § 1592(e)(4). If the Court finds a violation of section 1592(a), all violators are jointly and severally liable for any lost revenue. 19 U.S.C. § 1592(d). The maximum penalty for negligence is the lesser of two times lost revenue or the domestic value of the imported merchandise. 19 U.S.C. § 1592(c)(4).

Lastly, in reviewing motions for default judgment, the Court accepts all factual allegations as true and assesses whether the Government's demand is within the bounds of remedies available under section 1592. "In examining a penalty enforcement action, the court must consider both whether the penalty imposed has a sufficient basis in law and fact, and whether Customs accorded the importer all the process to which [it] is entitled by statute and regulation." *United States v. Green Planet, Inc.*, 494 F. Supp. 3d 1356, 1359-60 (Ct. Int'l Trade 2021) (cleaned up). "As necessary in cases of default, the court accepts the Government's factual allegations as true." *Id*. at 1360 (citing USCIT R. 55). Indeed, where "Defendant has defaulted, it raises no equitable claim, argument, or

5

factual allegations supportive of a lesser penalty amount." *Id*. at 1361. And as a result, the Court should enter default judgment for the full penalty demand so long as the penalty does not exceed the statutory maximum. *Id*.

## II.     Rayson And Ms. Cheng Are Liable For Negligence Under Section 1592(a)

First and foremost, the evidence establishes material false statements under 19 U.S.C. § 1592(a). Contrary to defendants' representations to CBP, all subject entries originated in China, not Thailand. First, the evidence of Green Asia's imports into Thailand and exports to Rayson are relevant and compelling. *United States v. Univar USA Inc.*, 294 F. Supp. 3d 1314, 1322 (Ct. Int'l Trade 2018) (holding similar evidence of transshipment admissible); *see also* Brooks Dec., Ex. G, Rayson-Appx287. Indeed, these data provide a clear fingerprint left by the transshipment scheme. Moreover, CBP's discovery that no manufacturing occurred at the purported manufacturing sites further confirms that the imported innersprings were not manufactured in Thailand. *Id*.

Second, it is the importer's burden to establish reasonable care. There is no evidence on the record that Rayson or Ms. Cheng undertook any action to determine the true origin of the imported merchandise. Rather, when asked to substantiate the origin of their imports, defendants failed to provide any evidence establishing that they attempted to determine the true country of origin of the imported innersprings. *See*, *e.g.*, Brooks Dec. at Ex. B, Rayson-Appx9-12 (defendants' response to request for information). Importers are negligent if they "'fail to exercise the degree of reasonable care and competence expected from a person in the same circumstances either: (a) in ascertaining the facts or in drawing inferences therefrom, in ascertaining the offender's obligations

under the statute; or (b) in communicating information in a manner so that it may be understood by the recipient.'" *United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1128 (Ct. Int'l Trade 2017) (quoting 19 C.F.R. Pt. 171, App. B(C)(1)) (cleaned up).

### III.     The Court Should Award Lost Revenue And The Full Penalty

As explained above, because defendants have defaulted, the allegations in the complaint and this motion are taken as true. The total loss of revenue here is $2,431,225.93, and thus the Court should issue a judgment for that amount of lost revenue. *Green Planet*, 494 F.Supp.3d 1356. Furthermore, the claimed penalty does "not exceed 'the lesser of the domestic value of the merchandise, or two times the lawful duties, taxes, and fees of which the United States is or may be deprived.'" *Id*. (quoting 19 U.S.C. § 1592(c)(3)(A)). Accordingly, the Court should enter judgment for that amount as well.

Finally, even if the Court were to review equitable factors related to the penalty amount under *United States v. Complex Mach. Works Co.*, 83 F.Supp.2d 1307, 1315 (Ct. Int'l Trade 1999), the evidence established that mitigation is unwarranted. As Import Specialist Brooks explained in her declaration, "[t]he import practices of [Ms.] Cheng and her companies have been the subject of CBP scrutiny since at least 2004." Brooks Dec. at ¶ 12, Rayson-Appx3; *id*. at Exs. M-P, Rayson-Appx 319-54. These other issues included rate advances for misclassification, quota evasion, uninvoiced goods, and undervaluation. Brooks Dec. at ¶ 12, Rayson-Appx3. Accordingly, even if the Court were to weigh the *Complex Machine Works* factors, there is no basis to mitigate the penalty here given Ms. Cheng's history of previous violations. *United States v. Nat'l*

7

*Semiconductor Corp.*, 547 F.3d 1364, 1368 (Fed. Cir. 2008) (citing *Complex Mach. Works*, 83 F.Supp.2d at 1315).

## CONCLUSION

For these reasons, we respectfully request that the Court enter default judgment against defendants Rayson Global, Inc. and Doris Cheng, jointly and severally, for lost revenue pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus prejudgment interest; and a penalty pursuant 19 U.S.C. § 1592(c) in the amount of $3,381,607.03.

        Respectfully submitted,

        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General

        PATRICIA M. McCARTHY
        Director

        /s/ FRANKLIN E. WHITE, JR.
        Assistant Director

OF COUNSEL:
Ina Zing         /s/ STEPHEN C. TOSINI
Attorney         Senior Trial Counsel
U.S. Customs and Border Protection     Commercial Litigation Branch
Office of the Assistant Chief Counsel     Civil Division
Seattle, WA         Department of Justice
        P.O. Box 480, Ben Franklin Station
        Washington, D.C. 20044
        Tel: (202) 616-5196
        Email: stephen.tosini@usdoj.gov

June 12, 2024         Attorneys for Plaintiff