Slip Op. 25-2

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES,**<br><br>                                  Plaintiff,<br><br>               v.<br><br>**RAYSON GLOBAL AND DORIS CHENG,**<br><br>                                  Defendants. | Before:  Timothy C. Stanceu, Judge<br><br>Court No. 23-00201 |

**OPINION AND ORDER**

[Denying without prejudice plaintiff's motion for judgment by default on plaintiff's claims for recovery of a civil penalty and collection of unpaid duties]

Dated: January 8, 2025

*Stephen C. Tosini*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for plaintiff.  With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Franklin E. White, Jr.*, Assistant Director.  Of counsel on the brief was *Ina Zing*, Attorney, U.S. Customs and Border Protection, Seattle, Washington.

*Henry Ng*, Law Office of Henry L. Ng, of Tustin, California, for defendants.

Stanceu, Judge: Plaintiff United States (the "government") seeks to recover a civil penalty and unpaid duties under section 592 of the Tariff Act of 1930, 19 U.S.C. § 1592 ("Section 592"), from defendants Rayson Global, Inc. ("Rayson Global"), a California corporation, and Doris Cheng, its chief executive officer.  Plaintiff alleges that Rayson Global and Doris Cheng negligently introduced merchandise ("uncovered mattress innersprings" or "innersprings") into the commerce of the United States under false

declarations of country of origin, depriving the United States of ordinary duties, antidumping duties, and "Section 301" duties. Plaintiff alleges that entry documentation falsely declared Thailand as the country of origin of the innersprings, which plaintiff alleges to have been products of the People's Republic of China ("China"). Am. Compl. ¶ 1, 22–24, 27 (Sept. 22, 2023), ECF No. 4 ("Compl.").

Before the court is the government's motion for a judgment by default, which seeks "lost revenue pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus prejudgment interest; and a penalty pursuant to 19 U.S.C. § 1592(c) in the amount of $3,381,607.03." Mot. for Entry of Default J. 8 (June 12, 2024), ECF Nos. 19 (conf.), 20 (public) ("Pl.'s Mot.").

The court denies plaintiff's motion without prejudice. Plaintiff describes the civil penalty it seeks, in the amount of $3,381,607.03, as equal to the domestic value of the merchandise on the entries at issue, *id.* at 3, which also would be the maximum civil penalty allowed under Section 592(c), 19 U.S.C. § 1592(c).[1] The court concludes that the claimed domestic value, as alleged in the complaint upon which the government's motion is based, is not a "well-pled" fact. Because it cannot grant relief on the claim for

---

[1] References to the United States Code and to the Harmonized Tariff Schedule of the United States herein are to the 2018 editions.

a civil penalty based on that complaint, the court declines at this time to address plaintiff's related Section 592(d) claim for lost revenue.

## I. Background

Plaintiff brought this action in September 2023. Summons (Sept. 22, 2023), ECF No. 1; Compl. Previously, the Clerk of the Court entered defendants' default at the court's direction, defendants having failed to answer the amended complaint ("Complaint") within the time period allowed by the court after two consent motions for enlargements of time. Order (May 23, 2024), ECF No. 14; Entry of Default (May 23, 2024), ECF No. 15. Following the entry of default, plaintiff filed the instant motion for a default judgment. Pl.'s Mot. Defendants have made no filings since the entry of default.

## II. Discussion

### A. Standard and Scope of Review

The court exercises jurisdiction over this action according to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1582. This Court has exclusive jurisdiction "of any civil action which arises out of an import transaction and which is commenced by the United States . . . to recover a civil penalty under section 592," 28 U.S.C. § 1582(1), or "to recover customs duties," *id*. § 1582(3). As Section 592 provides, the court determines all issues *de novo*, including the amount of any penalty. 19 U.S.C. § 1592(e)(1).

In evaluating a motion for judgment by default, the court accepts as true all well-pled facts in the complaint but must reach its own legal conclusions. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)); 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688.1 (4th ed. 2024). An entry of default, however, does not necessarily entitle plaintiff to the relief it seeks; rather, the pleadings must contain well-pled facts sufficient to support a judgment by default. *See Nishimatsu*, 515 F.2d at 1206.

**B. Allegations Pertaining to a Claim for Monetary Penalty under Section 592(c)**

**1. Facts Pled in the Complaint Claiming a Violation of Section 592(a) Based on a Level of Culpability of Negligence**

It is unlawful for any person, by fraud, gross negligence, or negligence, to enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of material and false documents, statements, or acts or material omissions, or to aid or abet another to do so. 19 U.S.C. § 1592(a)(1)(A), (B). Therefore, in ruling on plaintiff's motion for a judgment by default, the court must determine whether the well-pled facts in the Complaint, if accepted as true, establish the liability of defendants for a civil penalty in the amount sought by plaintiff.

When the United States seeks to recover a Section 592 monetary penalty based on a level of culpability of negligence, "the United States shall have the burden of proof to

Court No. 23-00201                                                                                                   Page 5

establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." *Id*. § 1592(e)(4).

Plaintiff bases its motion for a default judgment on 46 consumption entries, made by Rayson Global at the direction of Doris Cheng, between September 26, 2018 and November 8, 2019 inclusive, of innersprings imported from Thailand. Pl.'s Mot. 2; *see* Compl. ¶ 23 & Exhibit A to Compl., ECF No. 4-1 ("Exhibit A"). As acts "constituting the violation," 19 U.S.C. § 1592(e)(4), the Complaint alleged that defendants, as to each of the entries at issue in this action, "falsely declared, or caused to be falsely declared, that the subject entries of innersprings were produced in Thailand." Compl. ¶ 23.

The Complaint alleged, further, that a loss of revenue to the United States resulted from the violations. Exhibit A to the Complaint lists four entries, made between September 26, 2018 and October 24, 2018 inclusive, for which is alleged an "Actual Loss of Revenue" of $205,723.83, which it calculates as the sum of ordinary duties at 6% *ad valorem*, duties owed under Section 301 of the Trade Act of 1974, 19 U.S.C. §§ 2411–20 ("Section 301"), at 10% *ad valorem*, and antidumping duties at 234.51% *ad valorem*. Exhibit A. The duties are calculated based on an alleged entered value of $82,122.00. *Id*.

For the remaining 42 entries, made between November 7, 2018 and November 8, 2019 inclusive, which apparently were unliquidated as of the filing of the Complaint, Exhibit A alleges a "Potential Loss of Revenue" of $2,225,502.10, presented as the sum of ordinary duties at 6% *ad valorem*, duties owed under Section 301, and antidumping duties at 234.51% *ad valorem*. The duties are calculated based on alleged entered value of $863,800, for a total entered value on all 46 entries (liquidated and unliquidated) of $945,922.00. *See id*.

The allegations pertaining to a loss of revenue to the United States are described in further detail below.

### a. Ordinary Duties

Subheading 9404.29.90, Harmonized Tariff Schedule of the United States ("HTSUS") (2018) contains the article description ". . . articles of bedding and similar furnishing . . . fitted with springs . . . whether or not covered: Mattresses: Of other materials [other than cellular rubber or plastics]: Other [not of cotton], Uncovered innerspring units." This article description applies to the merchandise alleged in the Complaint to have been imported by defendants. It was unchanged in the 2019 version of the HTSUS.

Products classified in subheading 9404.29.90, HTSUS are subject to a general (MFN) duty rate of 6% *ad valorem*. Products of Thailand classifiable under the

Court No. 23-00201                                                                                                           Page 7

subheading and qualifying under the Generalized System of Preferences ("GSP") are eligible for duty-free tariff treatment. *See* Compl. ¶¶ 26, 27. Products of China are not eligible for GSP duty-free tariff treatment. *See* General Notes 11–16, HTSUS (listing countries eligible for GSP duty-free tariff treatment).

The Complaint alleged that defendants "falsely declared, or caused to be falsely declared, that entries of innersprings qualified for duty free treatment under the GSP for merchandise manufactured in Thailand." Compl. ¶ 27. It alleged that the unpaid duties of 6% *ad valorem* amounted to $56,755.32. Exhibit A.

### b. Antidumping Duties

The Complaint alleged that defendants "falsely omitted from entry documentation, or caused to be falsely omitted from entry documentation, the fact that entries of innersprings were subject to ADD [antidumping duty] order A-570-928," referring to the identifying number of an antidumping duty investigation on innersprings from China. Compl. ¶ 25. The Complaint further alleged that the imported innersprings were described by the scope language of an antidumping duty order ("Order") on innersprings from China published by the International Trade Administration, U.S. Department of Commerce. *Id*. ¶¶ 20, 25 (citing *Uncovered Innerspring Units from the People's Republic of China: Notice of Antidumping Duty Order*, 74 Fed. Reg. 7,661, 7,661–62 (Int'l Trade Admin. Feb. 19, 2009) ("*Order*")).

**Court No. 23-00201** Page 8

The scope language of the Order provides, in pertinent part, that the Order applies to "uncovered innerspring units composed of a series of individual metal springs joined together in sizes corresponding to the sizes of adult mattresses . . . and units used in smaller constructions, such as crib and youth mattresses." *Order*, 74 Fed. Reg. at 7,661. The government alleged that the innersprings at issue in this case conformed to the scope language of the Order. *See* Compl. ¶¶ 20, 25.

According to the Complaint, all of the entries upon which plaintiff seeks a default judgment were subject to a "China-wide" antidumping duty cash deposit rate of 234.51% *ad valorem*. *Id.* ¶ 20. The 234.51% China-wide rate was imposed by the Order. *Order*, 74 Fed. Reg. at 7,662. The China-wide rate continued through administrative reviews. *See, e.g.*, *Uncovered Innerspring Units From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review*, 85 Fed. Reg. 6,907, 6,908 (Int'l Trade Admin. Feb. 6, 2020); *Uncovered Innerspring Units From the People's Republic of China: Final Results of Antidumping Duty Administrative Review*, 88 Fed. Reg. 7,688 (Int'l Trade Admin. Feb. 6, 2023). The Complaint alleged that the total antidumping duties owed on the entries at issue are $2,218,281.68. Exhibit A.

### c. Section 301 Duties

The Complaint alleged that the first 26 entries at issue, made between September 26, 2018 and May 1, 2019 inclusive, were subject to duties of 10% *ad valorem*

imposed on products of China according to Section 301.  Compl. ¶¶ 31, 32; Exhibit A. It alleged that the remaining 20 entries, made between May 17, 2019 and November 8, 2019 inclusive, were subject to 25% duties under Section 301.  Compl. ¶¶ 31, 32; Exhibit A.  The Complaint alleged a total loss of revenue (actual and potential) of $156,188.95 in Section 301 duties.  Exhibit A.

The Section 301 duties became effective on September 24, 2018, when the United States imposed, through new subheading 9903.88.03, HTSUS, a 10% *ad valorem* duty on products of China specified in certain other HTSUS subheadings.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974, 47,974, 47,976–48,001 (Office of the U.S. Trade Representative Sept. 21, 2018).  The notice included subheading 9404.29.90, HTSUS.  *Id.*, 83 Fed. Reg. at 48,000.  The Complaint alleged that the action "includes the HTSUS subheading for the merchandise covered by the subject entries." Compl. ¶¶ 31, 32; *see* subheading 9404.29.90, HTSUS (2018).  Effective May 10, 2019, the 10% *ad valorem* Section 301 duties were increased to 25% *ad valorem*.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459, 20,459 (Office of the U.S. Trade Representative May 9, 2019); Compl. ¶ 31.  The Complaint listed in Exhibit A

"9903 Duties that Should Have Been Paid" pursuant to a "9903 Classification Entered Rate" of 10% or 25%, depending on the date of the entry.  *See* Exhibit A.

### 2.  Agency Procedures Conducted under 19 U.S.C. § 1592(b)

The Complaint alleges that U.S. Customs and Border Protection ("Customs") issued pre-penalty and penalty notices to defendants in the amount of $4,200,081.76, which the Complaint alleged as the domestic value of the merchandise on the entries identified in those notices.[2]  Compl. ¶¶ 37–39.  It alleges, further, that defendants did not respond to the penalty notice.  *Id.* ¶ 43.

### 3.  Claim for a Monetary Penalty of $3,381,607.03 in the Statutory Maximum Amount under Section 592(c)

For a violation that is based on a level of culpability of negligence and that results in a loss of revenue to the United States, section 592(c) provides for "a civil penalty in an amount not to exceed . . . the lesser of . . . the domestic value of the merchandise, or . . . two times the lawful duties, taxes, and fees of which the United States is or may be deprived."  19 U.S.C. § 1592(c)(3)(A).

---

[2] Plaintiff explained that "[b]ecause the statute of limitations had expired for certain entries, in our original and amended complaints, we sought reduced lost revenue pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus prejudgment interest; and a penalty pursuant to 19 U.S.C. § 1592(c) in the amount of $3,381,607.03."  Mot. for Entry of Default J. 4 (June 12, 2024), ECF Nos. 19 (conf.), 20 (public) ("Pl.'s Mot.").

The government alleges that the entries on which it seeks a civil penalty resulted in an actual loss of revenue of $205,723.83, and a "potential" loss of revenue of $2,225,502.10, to the United States, for a total loss of revenue of $2,431,225.93. Exhibit A. Two times the alleged loss of revenue exceeds the $3,381,607.03 domestic value of the merchandise as alleged in the Complaint, ¶ 46, and in plaintiff's motion for a judgment by default, Pl.'s Mot. 3. The government seeks a civil penalty in that amount.

The government's current position is that the domestic value of the merchandise on the 46 entries for which the statute of limitations has not expired is $3,381,607.03. *Id.* at 3–4. While this fact is alleged in paragraph 46 of the Complaint, it is not a "well-pled" fact. The Complaint states no supporting facts upon which the court may accept this assertion of the domestic value of the merchandise. The court notes, additionally, that a domestic value of $3,381,607.03 is more than three and one-half times the entered value of $945,922.00, as stated in the Complaint.[3] *See* Exhibit A. Without further allegations to support the claimed domestic value of the merchandise at issue in this case, the court cannot reconcile that alleged domestic value with the alleged entered value of that same merchandise.

---

[3] Plaintiff's motion for a default judgment cites a "declaration of Import Specialist Jeanelle Brooks," along with two exhibits, to support the figure it claims as the domestic value. *See* Pl.'s Mot. 2 n.1, 3. The declaration and its exhibits are not part of the complaint upon which plaintiff relies for its motion.

Because the alleged domestic value of the merchandise is the basis for the government's penalty claim, the court must deny relief on that claim, and it does so without prejudice.

### C. Claim for Unpaid Duties Pursuant to Section 592(d)

Regardless of whether a monetary penalty under 19 U.S.C. § 1592(a) is assessed, Customs is directed to require payment of any "lawful duties, taxes, or fees" resulting from a violation of § 1592(a). 19 U.S.C. § 1592(d).

Because the court cannot grant relief on the government's claim for a civil penalty under Section 592(c) upon the Complaint now before the court, it declines to address at this time the government's other claim, which is for "lost revenue pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus prejudgment interest." Pl.'s Mot. 8. Accordingly, the court declines to consider, *sua sponte*, the entry of a partial judgment pursuant to USCIT Rule 54(b).

### III. CONCLUSION

From its review of the Complaint and of plaintiff's motion for judgment by default, the court concludes that plaintiff has not established its entitlement to a judgment by default against defendants for a civil penalty under 19 U.S.C. § 1592. Upon consideration of all papers and proceedings herein, it is hereby

**ORDERED** that plaintiff's application for judgment by default against defendants Rayson Global, Inc. and Doris Cheng be, and hereby is, denied without prejudice.

                                                            /s/ Timothy C. Stanceu
                                                          Timothy C. Stanceu, Judge

Dated: January 8, 2025
       New York, New York