Slip Op. 25-92

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES,**<br><br>                         Plaintiff,<br><br>           v.<br><br>**RAYSON GLOBAL, INC. AND DORIS CHENG,**<br><br>                         Defendants. | Before:  Timothy C. Stanceu, Judge<br><br>Court No. 23-00201 |

**OPINION**

[Granting plaintiff's motion for judgment by default on plaintiff's claims for recovery of a civil penalty and collection of unpaid duties]

Dated: July 18, 2025

*Stephen C. Tosini*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for plaintiff.  With him on the brief were *Yaakov A. Roth*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Franklin E. White, Jr.*, Assistant Director.  Of counsel on the brief was *Ina Zing*, Attorney, U.S. Customs and Border Protection, Seattle, Washington.

*Henry Ng*, Law Office of Henry L. Ng, of Tustin, California, for defendants.

Stanceu, Judge: Plaintiff United States (the "government") brought this action in September 2023 to recover a civil penalty and unpaid duties under section 592 of the Tariff Act of 1930, *as amended* ("Tariff Act"), 19 U.S.C. § 1592 ("Section 592"), from defendants Rayson Global, Inc. ("Rayson Global"), a California corporation, and Doris

**Court No. 23-00201**                                                                                                                  **Page 2**

Cheng, its chief executive officer.[1] Plaintiff alleges that Rayson Global and Doris Cheng negligently caused merchandise ("uncovered mattress innersprings" or "innersprings") to be introduced into the commerce of the United States under false declarations of country of origin and thereby deprived the United States of ordinary duties, antidumping duties, and "Section 301" duties. Plaintiff alleges that entry documentation falsely declared Thailand as the country of origin of the innersprings, which plaintiff alleges to have been products of the People's Republic of China ("China").

      Before the court is the government's second motion for a judgment by default, which seeks "lost revenue pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus prejudgment interest; and a penalty pursuant to 19 U.S.C. § 1592(c) in the amount of $3,381,607.03." Second Mot. for Entry of Default J. 10 (May 7, 2025), ECF Nos. 25 (conf.), 26 (public) ("Pl.'s Mot."). The court will award a civil penalty in the amount sought by plaintiff and require the restoration of lost revenue, with interest as provided by law.

---

[1] References to the United States Code and to the Harmonized Tariff Schedule of the United States herein are to the 2018 editions.

## I. BACKGROUND

Following an entry of default by the Clerk of the Court, Entry of Default (May 23, 2024), ECF No. 15, plaintiff filed its first motion for a default judgment, which the court denied based on its ruling that plaintiff's complaint lacked a well-pled factual allegation of the domestic value of the merchandise involved in this action, *United States v. Rayson Glob.*, 49 CIT \_\_, \_\_, 747 F. Supp. 3d 1376, 1378 (2025) ("*Rayson Global I*"). The court subsequently granted plaintiff's motion for leave to file a second amended complaint ("Complaint"), which motion defendants did not oppose. Order (Mar. 27, 2025), ECF No. 23; Second Am. Compl. (Mar. 27, 2025), ECF No. 24 ("Compl."). Due to defendants' failure to file within the time period permitted by this Court's rules an answer to the second amended complaint, a motion for an enlargement of time, or a dispositive motion, the Clerk of Court again entered a default. Entry of Default (May 27, 2025), ECF No. 28.

Defendants did not file a response to plaintiff's second motion for a judgment by default, which was due on June 11, 2025, nor have they moved for an enlargement of time.

## II. Discussion

### A. Jurisdiction; Scope and Standard of Review

The court exercises jurisdiction over this action according to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1582. This Court has "exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States . . . to recover a civil penalty under section 592," 28 U.S.C. § 1582(1), or "to recover customs duties," *id.* § 1582(3).

As Section 592 provides, the court determines all issues *de novo,* including the amount of any penalty. 19 U.S.C. § 1592(e)(1).

In ruling on a motion for judgment by default, the court accepts as true all well-pled facts in the complaint but must reach its own legal conclusions. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)); 10A Wright & Miller's Federal Practice and Procedure § 2688.1 (4th ed. 2025).

### B. Claim for Monetary Penalty under Section 592(c)

#### 1. Facts Pled in the Complaint Claiming a Violation of Section 592(a) Based on a Level of Culpability of Negligence

Under Section 592, it is unlawful for any person, by fraud, gross negligence, or negligence, to enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of material and false documents,

Court No. 23-00201                                                                                                    Page 5

statements, or acts or material omissions, or to aid or abet another to do so. 19 U.S.C. § 1592(a)(1)(A), (B). When the United States seeks to recover a Section 592 monetary penalty based on a level of culpability of negligence, "the United States shall have the burden of proof to establish the act or omission constituting the violation, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." *Id*. § 1592(e)(4). As discussed below, the court determines that the well-pled facts in the Complaint, when accepted as true, establish the liability of defendants for a civil penalty under Section 592.

Plaintiff bases its motion on 46 consumption entries made between September 26, 2018 and November 8, 2019 inclusive, of innersprings imported from Thailand. Pl.'s Mot. 2; Exhibit A to Compl. (Mar. 27, 2025), ECF No. 24-1 ("Exhibit A"); *see also* Compl. ¶¶ 1, 21. As acts "constituting the violation," 19 U.S.C. § 1592(e)(4), the Complaint alleged that defendants, as to each of the entries at issue in this action, "falsely declared, or caused to be falsely declared, that the subject entries of innersprings were produced in Thailand," Compl. ¶ 23.

The Complaint alleged, further, that a loss of revenue to the United States resulted from the violations. *Id*. ¶ 22. Exhibit A to the Complaint lists four entries, made between September 26, 2018 and October 24, 2018 inclusive, for which is alleged an "Actual Loss of Revenue" of $205,723.83, which it calculates as the sum of ordinary

Court No. 23-00201                                                                                              Page 6

duties at 6% *ad valorem*, duties owed under Section 301 of the Trade Act of 1974, 19 U.S.C. § 2411 ("Section 301"), at 10% *ad valorem*, and antidumping duties at 234.51% *ad valorem*. Exhibit A. The duties are calculated based on an alleged entered value of $82,122.00. *Id.*

For the remaining 42 entries, made between November 7, 2018 and November 8, 2019 inclusive, which apparently remained unliquidated as of the filing of the Complaint, Exhibit A alleges a "Potential Loss of Revenue" of $2,225,502.10, presented as the sum of ordinary duties at 6% *ad valorem*, duties owed under Section 301 at 10% *ad valorem*, and antidumping duties at 234.51% *ad valorem*. The duties are calculated based on alleged entered value of $863,800, for a total entered value on all 46 entries (liquidated and unliquidated) of $945,922.00. *See id*.

The allegations pertaining to a loss of revenue to the United States are described in further detail below.

### a. Ordinary Duties

Subheading 9404.29.90, Harmonized Tariff Schedule of the United States ("HTSUS") (2018) contains the article description ". . . articles of bedding and similar furnishing . . . fitted with springs . . . whether or not covered: Mattresses: Of other materials [other than cellular rubber or plastics]: Other [not of cotton], Uncovered innerspring units." This article description applies to the merchandise alleged in the

Court No. 23-00201                                                                                                       Page 7

Complaint to have been imported by defendants. It was unchanged in the 2019 version of the HTSUS.

Products classified in subheading 9404.29.90, HTSUS are subject to a general (MFN) duty rate of 6% *ad valorem*. Products of Thailand classifiable under the subheading and qualifying under the Generalized System of Preferences ("GSP") are eligible for duty-free tariff treatment. *See* Compl. ¶¶ 26, 27; *see also* 19 U.S.C. § 2461. Products of China are not eligible for GSP duty-free tariff treatment. *See* General Notes 11–14, HTSUS (listing countries eligible for GSP duty-free tariff treatment).

The Complaint alleged that defendants "falsely declared, or caused to be falsely declared, that entries of innersprings qualified for duty free treatment under the GSP for merchandise manufactured in Thailand." Compl. ¶ 27. It alleged that the unpaid duties of 6% *ad valorem* amounted to $56,755.32. Exhibit A.

### b. Antidumping Duties

The Complaint alleged that defendants "falsely omitted from entry documentation, or caused to be falsely omitted from entry documentation, the fact that entries of innersprings were subject to ADD [antidumping duty] order A-570-928," referring to the identifying number of an antidumping duty investigation on innersprings from China. Compl. ¶ 25; *see also id.* ¶¶ 19–20. The Complaint further alleged that the imported innersprings were described by the scope language of an

antidumping duty order ("Order") on innersprings from China published by the International Trade Administration, U.S. Department of Commerce. *Id*. ¶¶ 20, 25 (citing *Uncovered Innerspring Units from the People's Republic of China: Notice of Antidumping Duty Order*, 74 Fed. Reg. 7,661, 7,661 (Int'l Trade Admin. Feb. 19, 2009) ("*Order*")).

The scope language of the Order provides, in pertinent part, that the Order applies to "uncovered innerspring units composed of a series of individual metal springs joined together in sizes corresponding to the sizes of adult mattresses . . . and units used in smaller constructions, such as crib and youth mattresses." *Order*, 74 Fed. Reg. at 7,661. The government alleged that the innersprings at issue in this case conformed to the scope language of the Order. *See* Compl. ¶¶ 22, 24–25.

According to the Complaint, all of the entries upon which plaintiff seeks a default judgment were subject to a "China-wide" antidumping duty cash deposit rate of 234.51% *ad valorem*. *Id*. ¶ 20; Exhibit A. The 234.51% China-wide rate was imposed by the Order. *Order*, 74 Fed. Reg. at 7,662. The China-wide rate continued through administrative reviews. *See, e.g.*, *Uncovered Innerspring Units From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review; 2018–2019*, 85 Fed. Reg. 6,907, 6,908 (Int'l Trade Admin. Feb. 6, 2020); *Uncovered Innerspring Units From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2021–2022*, 88 Fed. Reg. 7,688, 7,688 (Int'l Trade Admin. Feb. 6, 2023). The Complaint alleged

that the total antidumping duties owed on the entries at issue are $2,218,281.68. Exhibit A.

### c. Section 301 Duties

The Complaint alleged that the first 26 entries at issue, made between September 26, 2018 and May 1, 2019 inclusive, were subject to duties of 10% *ad valorem* imposed on products of China according to Section 301. Compl. ¶¶ 31–32; Exhibit A. It alleged that the remaining 20 entries, made between May 17, 2019 and November 8, 2019 inclusive, were subject to 25% duties under Section 301. *Id*. The Complaint alleged a total loss of revenue (actual and potential) of $156,188.95 in Section 301 duties. Exhibit A.

The Section 301 duties became effective on September 24, 2018, when the United States imposed, through new subheading 9903.88.03, HTSUS, a 10% *ad valorem* duty on products of China specified in certain other HTSUS subheadings. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974, 47,974, 47,976–48,001 (Off. of the U.S. Trade Representative Sept. 21, 2018). The notice included subheading 9404.29.90, HTSUS. *Id.*, 83 Fed. Reg. at 48,000. The Complaint alleged that the action "includes the HTSUS subheading for the merchandise covered by the subject entries." Compl. ¶ 32; *see* subheading 9404.29.90, HTSUS. Effective May 10, 2019, the 10%

*ad valorem* Section 301 duties were increased to 25% *ad valorem*. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459, 20,459 (Off. of the U.S. Trade Representative May 9, 2019); Compl. ¶ 31. The Complaint listed in Exhibit A "9903 Duties that Should Have Been Paid" pursuant to a "9903 Classification Entered Rate" of 10% or 25%, depending on the date of the entry. *See* Exhibit A.

### 2. Agency Procedures Conducted under 19 U.S.C. § 1592(b)

The Complaint alleges that U.S. Customs and Border Protection ("Customs" or "CBP") issued pre-penalty and penalty notices to defendants in the amount of $4,200,081.76, which the Complaint alleged as the domestic value of the merchandise on the entries identified in those notices.[2] Compl. ¶¶ 37–39. It alleges, further, that defendants did not respond to the penalty notice. *Id.* ¶ 43.

---

[2] Plaintiff alleges that "[w]e have not included entries made between May 26, 2018, and September 6, 2018, in the second amended complaint, although the penalty notice covered entries made during that timeframe." Second Am. Compl. ¶ 44 (Mar. 27, 2025), ECF No. 24 ("Complaint"). Plaintiff explained that "[b]ecause the statute of limitations had expired for certain entries, in our original and amended complaints, we sought reduced lost revenue pursuant to 19 U.S.C. § 1592(d), in the amount of $2,431,225.93, plus prejudgment interest; and a penalty pursuant to 19 U.S.C. § 1592(c) in the amount of $3,381,607.03." Second Mot. for Entry of Default J. 4 (May 7, 2025), ECF Nos. 25 (conf.), 26 (public) (citation omitted).

### 3. The Basis of Plaintiff's Claim for a Monetary Penalty of $3,381,607.03 in the Statutory Maximum Amount Allowed under Section 592

For a violation that is based on a level of culpability of negligence and that results in a loss of revenue to the United States, section 592 provides for "a civil penalty in an amount not to exceed . . . the lesser of . . . the domestic value of the merchandise, or . . . two times the lawful duties, taxes, and fees of which the United States is or may be deprived." 19 U.S.C. § 1592(c)(3)(A).

The government alleges that the entries on which it seeks a civil penalty resulted in an actual loss of revenue of $205,723.83, and a "potential" loss of revenue of $2,225,502.10, to the United States, for a total loss of revenue of $2,431,225.93. Exhibit A. This amount is the sum of the alleged actual and potential loss of ordinary duties ($56,755.32), Section 301 duties ($156,188.95), and antidumping duties ($2,218,281.68).[3]

Two times the alleged loss of revenue exceeds the $3,381,607.03 domestic value of the merchandise on the 46 entries, as alleged in the Complaint, ¶¶ 44, 47, and in

---

[3] The Complaint alleges that the total amount of antidumping duties owed on the entries at issue is $2,218,281.68. Exhibit A to Compl. (Mar. 27, 2025), ECF No. 24-1 ("Exhibit A"). But the sum of the antidumping duties specified with respect to each of the entries listed in Exhibit A from September 26, 2018 through November 8, 2019 inclusive is $2,218,281.66, which is $.02 less than the total amount shown in Exhibit A. Combining this total ($2,218,281.66) with the ordinary duties ($56,755.32) and the Section 301 duties ($156,188.95) results in the government's claimed total loss of revenue of $2,431,225.93.

plaintiff's motion for a judgment by default, Pl.'s Mot. 3. The government seeks a civil penalty in the amount of the total domestic value of the merchandise, which, based on the allegations in the Complaint, would be the maximum penalty provided for under 19 U.S.C. § 1592(c)(3)(A).

### 4. The Court Deems Admitted the Alleged Facts Pertaining to the Material False Statements, the Revenue Loss, the Defendants' Negligence, and the Domestic Value of the Imported Merchandise

The court accepts as "well-pled facts," and, therefore, admitted facts, that defendants imported Chinese-origin innersprings from Thailand and that the country of origin of the innersprings falsely was declared as Thailand on the entry documentation for each of the 46 entries upon which plaintiff bases its motion for a judgment by default. The court accepts, further, the detailed allegations that the false declarations of origin resulted in a loss of revenue to the United States (actual and potential) of $2,431,225.93 and were, therefore, "material" within the meaning of 19 U.S.C. § 1592(a)(1)(A). The actual revenue loss claimed by plaintiff pertains to the duties alleged to be owed upon liquidation. The potential revenue loss, determined from the unliquidated entries, is a deprivation of revenue owing to the alleged failure of plaintiffs to make cash deposits for estimated duties.

Plaintiff alleges that the false statements of country of origin occurred as a result of defendants' negligence when causing the importations at issue in this case. Compl.

¶ 34 (alleging that the material false statements of country of origin resulted from defendants' "failure to exercise reasonable care and competence to ensure that statements made and information provided in connection with the importation of merchandise were complete and accurate").  The allegation of negligence is unrebutted due to the defendants' default, and the court, therefore, accepts as a fact that the material false statements upon which plaintiff bases its Complaint and motion for judgment by default occurred as a result of negligence on the part of defendants.  *See* 19 U.S.C. § 1592(e)(4).

The Complaint includes an allegation of the domestic value of the merchandise.  Plaintiff alleges a domestic value of $3,381,607.03, which it describes as equal to "the sum of the merchandise's declared entered value, duties, taxes, and fees."  Compl. ¶ 44 (citing Exhibit A & Exhibit B to Compl., CBP Directive No. 5240-001A, Appraising Seized Property § 5.10 (U.S. Cust. & Border Prot. Nov. 13, 2005)).  The court concludes that this allegation of domestic value is sufficient for purpose of determining the amount of a penalty set at the domestic value of the imported merchandise.  As shown on Exhibit A, the government calculated the domestic value of $3,381,607.03 as the sum of the alleged declared entered value ($945,922.00), the alleged lost revenue (actual and potential) from unpaid liquidated duties and cash deposits ($2,431,225.93), and alleged

**Court No. 23-00201** Page 14

unpaid import fees ($4,459.10).  Plaintiff did not include any freight or other incidental charges, or any profit, in the calculation of domestic value.  *See* Pl.'s Mot. 4, 9–10.

### 5. The Court Grants No Relief from Penalty for Mitigation

The court may exercise discretion in determining the amount of a penalty under Section 592.  *See* 19 U.S.C. §1592(e)(1) ("[I]n any proceeding commenced by the United States . . . for the recovery of any monetary penalty claimed under this section . . . all issues, *including the amount of the penalty*, shall be tried de novo.") (emphasis added).

Defendants have not responded to the instant motion for judgment by default, nor does any other submission before the court establish an adequate basis for mitigation from a penalty set at the domestic value of the imported merchandise, as alleged by the government.  In addition, the Complaint alleges facts, unrebutted by defendants, that Doris Cheng, the only paid officer of Rayson Global, Compl. ¶ 8, "directed the importation of innersprings," *id*. ¶ 5.  It further alleges that Ms. Cheng has been involved in the importation of innersprings from China since 2004, *id*. ¶¶ 9–12, indicating that she is an experienced importer.  Moreover, the Complaint alleges that Ms. Cheng, as a principal and co-owner of an importing company known as Tower Grow, admitted past violations of customs laws.  *Id*. ¶¶ 11, 14.

### C. Claim for Unpaid Duties Pursuant to Section 592(d)

Regardless of whether a monetary penalty under 19 U.S.C. § 1592(a) is assessed, Customs is directed to require payment of any "lawful duties, taxes, or fees" resulting from a violation of § 1592(a). 19 U.S.C. § 1592(d). The court will order, therefore, that defendants pay all duties, taxes, and fees that remain unpaid on the liquidated entries at issue in this case, with interest as required by law. The court will order, further, that defendants make the required cash deposits that have not yet been tendered, for all entries at issue in this case that remain unliquidated, with interest as required by law.

### III. CONCLUSION

For the reasons discussed in the foregoing, the court awards plaintiff a civil penalty in the amount of $3,381,607.03 and will order defendants to pay all duties, taxes, and fees that remain unpaid on the liquidated entries at issue in this case, with interest as required by law, and make the required cash deposits that have not yet been tendered, for all entries at issue in this case that remain unliquidated, with interest as required by law. The court will enter judgment accordingly.

                                                                  /s/ Timothy C. Stanceu
                                                                Timothy C. Stanceu, Judge

Dated: July 18, 2025
      New York, New York